HELEN ABDOUCH, APPELLANT, V. KEN LOPEZ, INDIVIDUALLY
AS A RESIDENT OF MASSACHUSETTS AND AS OWNER
AND OPERATOR OF KEN LOPEZ BOOKSELLER,
A MASSACHUSETTS BUSINESS, APPELLEE.

___ N.W.2d ___

Filed April 19, 2013.   No. S-12-363.

1. **Judgments: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. An appellate court reviews questions of law independently of the lower court's conclusion.

2. **Jurisdiction: Rules of the Supreme Court: Pleadings: Appeal and Error.** When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

3. **Jurisdiction: Judgments: Appeal and Error.** An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party.

4. **Pleadings: Affidavits: Appeal and Error.** If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

5. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

6. **Due Process: Jurisdiction: States.** Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

7. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute provides that a court may exercise personal jurisdiction over a person who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

8. **Jurisdiction: States: Legislature: Intent.** It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.

9. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.

10. **Due Process: Jurisdiction: States.** When a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.

11. ____: ____: ____. To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires that the defendant have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice.

12. ____: ____: ____. The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.

13. **Jurisdiction: States.** Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.

14. **Due Process: Jurisdiction: States: Appeal and Error.** In analyzing personal jurisdiction, an appellate court considers the quality and type of the defendant's activities in deciding whether the defendant has the necessary minimum contacts with the forum state to satisfy due process.

15. **Jurisdiction: States.** In the exercise of general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in continuous and systematic general business contacts with the forum state.

16. ____: ____. If a defendant's contacts are neither substantial nor continuous and systematic and instead the cause of action arises out of or is related to the defendant's contacts with the forum, a court may assert specific jurisdiction over the defendant, depending upon the nature and quality of such contact.

17. **Jurisdiction: Courts.** Technological advances do not render impotent the Nebraska Supreme Court's longstanding principles on personal jurisdiction.

18. **Jurisdiction: States.** The "sliding scale" test in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), considers a Web site's interactivity and the nature of the commercial activities conducted over the Internet to determine whether the courts have personal jurisdiction over nonresident defendants.

19. **Jurisdiction: States: Constitutional Law: Statutes.** The "sliding scale" test in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), does not amount to a separate framework for analyzing Internet-based jurisdiction, but, rather, relies on traditional statutory and constitutional principles.

20. **Torts: Jurisdiction: States.** For intentional tort claims, the specific jurisdiction inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state.

21. ____: ____: ____. A defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state.

22. **Jurisdiction: States.** Under a personal jurisdiction analysis, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Mary Kay Green for appellant.

Michael C. Cox, David A. Yudelson, and Kristin M.V. Farwell, of Koley Jessen, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and CASSEL, JJ.

McCormack, J.

## I. NATURE OF CASE

Helen Abdouch filed suit against an out-of-state defendant, Ken Lopez, individually and as owner and operator of his company, Ken Lopez Bookseller (KLB), under Neb. Rev. Stat. § 20-202 (Reissue 2012) for violating her privacy rights by using an inscription in Abdouch's stolen copy of a book entitled "Revolutionary Road"[1] to advertise on the KLB rare books Web site. Although not reflected in the case title, the parties and the lower court refer to Lopez and KLB as separate defendants, and so we will treat them as such in this opinion. Lopez and KLB filed, and the district court sustained, a motion to dismiss for lack of personal jurisdiction. Abdouch now appeals.

## II. BACKGROUND

Abdouch is a resident of Omaha, Nebraska. In 1960, Abdouch was the executive secretary of the Nebraska presidential campaign of John F. Kennedy. In 1963, Abdouch received a copy of the book, which was inscribed to her by the late author Richard Yates. The inscription stated: "For Helen Abdouch — with admiration and best wishes. Dick Yates. 8/19/1963."

At some time not specified by the record, Abdouch's inscribed copy of the book was stolen. Lopez and his company, KLB, bought the book in 2009 from a seller in Georgia and sold it that same year to a customer not in Nebraska. In 2011,

---

[1] Richard Yates, Revolutionary Road (Boston, Little Brown 1961).

Abdouch, who does not own a computer, learned from a friend that Lopez had used the inscription in the book for advertising purposes on his Web site, http://www.lopezbooks.com. The commercial advertisement had been used with the word "SOLD" on the Web site for more than 3 years after the book was sold. The advertisement associated with a picture of the inscription stated in relevant part:

> This copy is <u>inscribed by Yates</u>: "For Helen Abdouch — with admiration and best wishes. Dick Yates. 8/19/63." Yates had worked as a speech writer for Robert Kennedy when Kennedy served as Attorney General; Abdouch was the executive secretary of the Nebraska (John F.) Kennedy organization when Robert Kennedy was campaign manager. The book is cocked; the boards are stained; the text is clean. A very good copy in a near fine, spine-tanned dust jacket. A scarce book, and it is extremely uncommon to find this advance issue of it signed. Given the date of the inscription — that is, during JFK's Presidency — and the connection between writer and recipient, it's reasonable to suppose this was an author's copy, presented to Abdouch by Yates. [#028096] SOLD

Lopez is the owner and sole proprietor of KLB, which is a rare book business based in Hadley, Massachusetts. KLB buys and sells rare books and manuscripts. KLB sells these books and manuscripts through published catalogs and through the Web site.

Generally, the Web site contains KLB's inventory of rare books and manuscripts. Individuals that visit the Website can browse and search the inventory. If individuals or entities choose to, they can purchase through the Web site.

In addition to selling books through catalogs and online, KLB attends and has exhibits at various antiquarian bookfairs. Over the past 25 years, Lopez and/or KLB have attended and exhibited at an estimated 300 to 400 bookfairs in various locations within the United States, as well as overseas. Lopez and KLB have never exhibited at or attended a book fair in Nebraska.

KLB has an active mailing list for its catalogs of approximately 1,000 individuals and entities. Among that list, only

two are located in Nebraska. According to Lopez' affidavit, KLB did not solicit the two Nebraska members; rather, the two individuals solicited contact with KLB and requested to be placed on the mailing list. Neither of these two individuals has any connection to the claims at issue in this lawsuit.

Neither Lopez nor KLB is registered to do business in Nebraska in any capacity. Lopez and KLB do not own or lease real estate in Nebraska, do not maintain an office in Nebraska, and have never conducted or attended meetings in Nebraska. Neither Lopez nor KLB has paid any Nebraska sales tax.

Lopez and KLB do not advertise in any publication that is published in or that otherwise originates from Nebraska. Lopez and KLB do not advertise in any publication that specifically targets potential customers in Nebraska. Beyond the two customers on the mailing list, Lopez and KLB do not target or reach out to customers or potential customers in Nebraska in any way.

The amount of contact with Nebraska and Nebraska residents is also demonstrated by KLB's sales. KLB's total sales for 2009 through 2011 were approximately $3.9 million. In 2009, KLB sold three books to a single Nebraska customer, earning a total of $76. In 2010, KLB sold three books to two Nebraska customers for $239.87. In 2011, two books were sold to a Nebraska customer for $299. All of these sales were initiated by the customers through the Web site.

Abdouch alleges that Lopez knew she was a resident of Nebraska when he violated her privacy. Lopez avers in his affidavit that he did not know that Abdouch was a resident of Nebraska until in or around June 2011, at which time he was contacted by someone and told that Abdouch lived in Nebraska. In Abdouch's affidavit, she counters that she has been informed that she can be easily found and identified as a Nebraska resident on the Internet and that there are only two people named "Helen Abdouch" in the entire United States.

After discovering Lopez and KLB's use of the inscribed book as an advertisement, Abdouch brought suit pursuant to § 20-202 against Lopez and KLB for violating her vigilantly

protected right of privacy. In a relevant part of the complaint, she alleged:

> 5. That . . . Lopez did an internet search for "Helen Abdouch" and found a brief reference to her as "executive secretary of the Nebraska (John F.) Kennedy campaign" in an October 10, 1960, <u>Time Magazine</u> article entitled: "DEMOCRATS: Little Brother is Watching" based on an interview with Robert F. Kennedy, campaign manager of his brother's John F. Kennedy's presidential campaign.

> 6. That based on this article, . . . Lopez wrote an ad for the sale of Abdouch's book on his online catalogue linking [Abdouch] to Yates through the Kennedy connection . . . and placed on [the KLB Web site] at www.lopezbooks.com and which was "broadcast" or sent out over the world wide web.

> 7. That by his own admission, . . . Lopez did not search the internet to determine whether . . . Abdouch was still alive and assumed she was dead so he made no further effort to get her permission.

Lopez and KLB filed a motion to dismiss for lack of personal jurisdiction, alleging that they do not have sufficient contacts with Nebraska for purposes of personal jurisdiction and have not purposefully availed themselves of the benefits and protections of the forum state. The district court granted the motion and dismissed the case.

## III. ASSIGNMENT OF ERROR

Abdouch assigns as error the district court's finding that it lacked personal jurisdiction over Lopez and KLB.

## IV. STANDARD OF REVIEW

[1,2] When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. An appellate court reviews questions of law independently of the lower court's conclusion.[2] When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg.

---

[2] *S.L. v. Steven L.*, 274 Neb. 646, 742 N.W.2d 734 (2007).

§ 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.[3]

[3,4] An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party.[4] If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[5]

## V. ANALYSIS

Abdouch argues that the district court erred in finding that the State lacked personal jurisdiction over Lopez and KLB. Abdouch argues that Lopez and KLB's active Web site deliberately targeted Abdouch with tortious conduct. She alleges these contacts are sufficient to create the necessary minimum contacts for specific jurisdiction.

[5,6] Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[6] Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[7]

### 1. Long-Arm Statute

[7-10] Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2008), provides: "A court may exercise personal jurisdiction over a person . . . [w]ho has any other contact

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, 269 Neb. 222, 691 N.W.2d 147 (2005).

with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.[8] Nebraska's long-arm statute, therefore, extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.[9] "[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause, . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process."[10] Therefore, the issue is whether Lopez and KLB had sufficient contacts with Nebraska so that the exercise of personal jurisdiction would not offend federal principles of due process.

## 2. Minimum Contacts

[11-13] Therefore, we consider the kind and quality of Lopez' and KLB's activities to decide whether they had the necessary minimum contacts with Nebraska to satisfy due process. To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires that the defendant have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice.[11] The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.[12] Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the

---

[8] *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004).

[9] *Erickson v. U-Haul Internat.*, 274 Neb. 236, 738 N.W.2d 453 (2007).

[10] *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

[11] *S.L. v. Steven L., supra* note 2.

[12] *Id.*

defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.[13]

[14,15] In analyzing personal jurisdiction, we consider the quality and type of the defendant's activities in deciding whether the defendant has the necessary minimum contacts with the forum state to satisfy due process.[14] A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction. In the exercise of general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in "'""'continuous and systematic general business contacts'"'"" with the forum state.[15]

[16] But if the defendant's contacts are neither substantial nor continuous and systematic, as Abdouch concedes is the case here, and instead the cause of action arises out of or is related to the defendant's contacts with the forum, a court may assert specific jurisdiction over the defendant, depending upon the nature and quality of such contact.[16]

In favor of specific jurisdiction, Abdouch argues that Lopez and KLB's Internet advertisement deliberately targeted Abdouch and other Nebraska residents. Abdouch argues that under a U.S. Supreme Court case, Lopez' and KLB's intentional tortious actions against her create specific jurisdiction in Nebraska.[17]

### (a) "Sliding Scale" Test

[17] The Internet and its interaction with personal jurisdiction over a nonresident is an issue of first impression for this court. Although other courts will help guide our decision, we take note that technological advances do not render impotent

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 652, 742 N.W.2d at 741.

[16] See *Quality Pork Internat. v. Rupari Food Servs., supra* note 8.

[17] See *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

our longstanding principles on personal jurisdiction. The U.S. Supreme Court explained:

> As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer* v. *Neff*, 95 U. S. 714 [(1877)], to the flexible standard of *International Shoe Co.* v. *Washington*, 326 U. S. 310 [(1945)]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.[18]

[18] With this in mind, the Eighth Circuit, as well as the majority of circuits,[19] has adopted the analytical framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,[20] for internet jurisdiction cases.[21] In that case, Zippo Manufacturing Company filed a complaint in Pennsylvania against nonresident Zippo Dot Com, Inc., alleging causes of action under the federal Trademark Act of 1946. Zippo Dot Com's contact with Pennsylvania consisted of over 3,000 Pennsylvania residents subscribing to its Web site. The district court in *Zippo*

---

[18] *Hanson v. Denckla*, 357 U.S. 235, 250-51, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (citation omitted).

[19] See, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003); *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002); *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002); *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir. 2003); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997).

[20] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

[21] *Lakin v. Prudential Securities, Inc., supra* note 19.

*Mfg. Co.* famously created a "sliding scale" test that considers a Web site's interactivity and the nature of the commercial activities conducted over the Internet to determine whether the courts have personal jurisdiction over nonresident defendants.[22] The court in *Zippo Mfg. Co.* explained the "sliding scale" as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.[23]

The district court held that Pennsylvania had personal jurisdiction over Zippo Dot Com and the causes of action. In doing so, the district court made two important findings. First, the district court found that the Zippo Dot Com Web site was a highly interactive commercial Web site. Second, and more important, the district court found that the trademark infringement causes of action were related to the business contacts with customers in Pennsylvania.

[19] Although widely recognized and accepted, most circuits use the *Zippo Mfg. Co.* sliding scale of interactivity test only as a starting point. As the Second Circuit noted, "'it does not amount to a separate framework for analyzing internet-based

---

[22] *Zippo Mfg. Co. v. Zippo Dot Com, Inc., supra* note 20, 952 F. Supp. at 1124.

[23] *Id.* (citations omitted).

jurisdiction'"; instead, "'traditional statutory and constitutional principles remain the touchstone of the inquiry.'"[24]

The Seventh Circuit has noted that "'[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is "interactive."'"[25] Many courts have held that even if the defendant operates a "'highly interactive'" Web site which is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.[26]

Our precedent states that for there to be specific personal jurisdiction, the cause of action must arise out of or be related to the defendant's contacts with the forum state.[27] This is consistent with the U.S. Supreme Court's precedent which has stated "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."[28]

In the case at hand, it is evident that the Web site is interactive under the *Zippo Mfg. Co.* sliding scale test. In his affidavit, Lopez admits that customers can browse and purchase books from the online inventory. Lopez admits that he has two customers in Nebraska who are on the mailing list for KLB's catalogs. He admits that from 2009 through 2011, a total of $614.87 in sales from the Web site was made to Nebraska residents out of an estimated $3.9 million in total sales.

---

[24] *Best Van Lines, Inc. v. Walker, supra* note 19, 490 F.3d at 252.

[25] *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).

[26] *Id.* at 559. See, also, *Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390 (4th Cir. 2003); *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002); *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000); *Minnesota Public Radio v. Virginia Beach Educ. Br.*, 519 F. Supp. 2d 970 (D. Minn. 2007).

[27] *Quality Pork Internat. v. Rupari Food Servs., supra* note 8.

[28] *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 418, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

But, beyond the minimal Web site sales to Nebraska residents and mailing catalogs to two Nebraska residents, Lopez' and KLB's contacts with Nebraska are nonexistent. Lopez and KLB do not own, lease, or rent land in Nebraska. They have never advertised directly in Nebraska, participated in bookfairs in Nebraska, or attended meetings in Nebraska, and neither has paid sales tax in Nebraska.

[20] Furthermore, the Seventh Circuit has recently stated that when "the plaintiff's claims are for intentional torts, the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state."[29] The reason for requiring purposeful direction is to "'ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.'"[30] Here, Abdouch's cause of action is an intentional tort based on Nebraska's privacy statute. There is no evidence, as discussed in greater detail later in the opinion, that Lopez and KLB purposefully directed the advertisement at Nebraska. Further, there is no evidence that Lopez and KLB intended to invade Abdouch's privacy in the State of Nebraska. Rather, the limited Internet sales appear to be random, fortuitous, and attenuated contacts with Nebraska.

Therefore, although Lopez and KLB's Web site is highly interactive, all of the contacts created by the Web site with the State of Nebraska are unrelated to Abdouch's cause of action.

### (b) *Calder* Effects Test

Abdouch argues that the effects test formulated by the U.S. Supreme Court in *Calder v. Jones*[31] creates personal jurisdiction over Lopez and KLB, because Lopez and KLB aimed their tortious conduct at Abdouch and the State of Nebraska. In *Calder*, two Florida residents participated in the publication of an article about a California resident who brought a libel action

---

[29] *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

[30] *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

[31] *Calder v. Jones, supra* note 17.

in California against the Florida residents. Both defendants asserted that as Florida residents, they were not subject to the jurisdiction of the California court in which the libel action was filed. The Supreme Court rejected the defendants' argument and noted that the defendants were

> not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner[s] wrote and . . . edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.[32]

[21] In coming to its holding, the U.S. Supreme Court created a test, now known as the *Calder* effects test, which has been explained by the Eighth Circuit:

> "[A] defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]."[33]

The Third Circuit has noted that the effects test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity."[34] Stated another way by the Third Circuit, "the effects test asks whether the plaintiff felt the brunt of the harm in the forum state, but it also asks whether defendants *knew* that the plaintiff would suffer the

---

[32] *Id.* at 789-90 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

[33] *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).

[34] *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998).

harm there and whether they *aimed* their tortious conduct at that state."[35] Similarly, the Eighth Circuit has stated that the *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'"[36]

In the context of Internet intentional tort cases, the federal circuit courts have rejected the argument that posting defamatory or invasive material to the World Wide Web is sufficient to confer personal jurisdiction. In *Johnson v. Arden*,[37] the plaintiffs filed a suit as a result of allegedly defamatory statements posted on an Internet discussion board. The complaint alleged that the Internet post stated, "'[The defendants] operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a "kitten mill" in Unionville Missouri.'"[38] The Eighth Circuit, accepting the allegations as true, found that the posting did not specifically target Missouri. Although Missouri was included in the posting, Missouri's inclusion was incidental and not performed for the purposes of having the consequences felt in Missouri. The Eighth Circuit held that it "construe[s] the *Calder* effects test narrowly, and hold[s] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."[39]

In *Young v. New Haven Advocate*,[40] two Connecticut newspapers posted Internet articles that allegedly defamed a Virginia prison warden. The Fourth Circuit held that Virginia did not have personal jurisdiction because the Connecticut defendants "did not manifest an intent to aim their websites

---

[35] *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007) (emphasis in original).

[36] *Dakota Industries v. Dakota Sportswear*, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (quoting *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989)).

[37] *Johnson v. Arden, supra* note 33.

[38] *Id.* at 796.

[39] *Id.* at 797.

[40] *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002).

or the posted articles at a Virginia audience."[41] The court observed that making the articles available to Virginia residents was not enough: "The newspapers must, through the Internet postings, manifest an intent to *target* and *focus* on Virginia readers."[42]

In *Revell v. Lidov*,[43] the defendant wrote a lengthy article posted on an Internet bulletin board on the terrorist bombing of Pan Am Flight 103, in which he, in part, accused the plaintiff of complicity in conspiracy and coverup. Rejecting personal jurisdiction in the plaintiff's forum state of Texas, the Fifth Circuit held that the defendant, who is not a Texas resident, did not expressly aim the posting at Texas, but, rather, at the entire world. The Fifth Circuit went on to say that "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test."[44]

As in *Johnson*, *Young*, and *Revell*, Lopez and KLB's placement of the advertisement online was directed at the entire world, without expressly aiming the posting at the State of Nebraska. Abdouch pleaded in her complaint that the advertisement was "'broadcast' or sent out over the world wide web," but Abdouch failed to plead facts that demonstrate that Nebraska residents were targeted with the advertisement. Although the advertisement does mention that "Abdouch was the executive secretary of the Nebraska (John F.) Kennedy organization," the advertisement does not expressly direct its offer of sale to Nebraska. As in *Johnson*, the mention of Nebraska here is incidental and was not included for the purposes of having the consequences felt in Nebraska. As in *Revell*, Lopez did not know that Abdouch was a resident of Nebraska. He assumed that she had passed away and thus had no way of knowing that the brunt of harm would be suffered in Nebraska. Abdouch's complaint fails to demonstrate

---

[41] *Id*. at 258-59.

[42] *Id*. at 263 (emphasis supplied).

[43] *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002).

[44] *Id*. at 475.

that Lopez and KLB had an intent to target and focus on Nebraska residents.

[22] In response, Abdouch alleges that this court gained personal jurisdiction in June 2011, when she had a representative contact Lopez with her objection to his commercial use of her name and identity in his advertisement. Abdouch cites the Eighth Circuit for the proposition that "'[m]inimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'"[45] However, as stated by the U.S. Supreme Court in *Burger King Corp. v. Rudzewicz*,[46] "'it is essential in each case that there be *some act by which the defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" We have held that under a personal jurisdiction analysis, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.[47] Thus, personal jurisdiction over Lopez and KLB cannot be created by the telephone call from Abdouch's representative to Lopez. Such contact is insufficient for personal jurisdiction purposes.

Even accepting Abdouch's allegations as true and reviewing the record in a light most favorable to Abdouch, we find that Abdouch's complaint and general allegations failed to show that Lopez and KLB "'uniquely or expressly aimed'" the Internet advertisement at Nebraska.[48]

## VI. CONCLUSION

We conclude that Abdouch's complaint fails to plead facts to demonstrate that Lopez and KLB have sufficient minimum

---

[45] See *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (quoting *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558 (8th Cir. 2003)).

[46] *Burger King Corp. v. Rudzewicz, supra* note 30, 471 U.S. at 475 (emphasis supplied).

[47] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 7.

[48] See *Johnson v. Arden, supra* note 33, 614 F.3d at 796.

contacts with the State of Nebraska. Although the Web site used to post the advertisement is interactive, the contacts created by the Web site are unrelated to Abdouch's cause of action. Furthermore, under the *Calder* effects test, the pleadings fail to establish that Lopez and KLB expressly aimed their tortious conduct at the State of Nebraska. For these reasons, Lopez and KLB could not have anticipated being haled into a Nebraska court for their online advertisement.

AFFIRMED.

MILLER-LERMAN, J., not participating.

———————

PAT ZWIENER, APPELLEE AND CROSS-APPELLANT,
V. BECTON DICKINSON-EAST, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed April 19, 2013.    No. S-12-563.

1. **Workers' Compensation.** Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.
2. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.
3. **Workers' Compensation: Words and Phrases.** Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.
4. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.
5. ____. The level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity, and does not directly correlate to current wages.
6. ____. An employee's return to work at wages equal to those received before the injury may be considered, but it does not preclude a finding that the employee is either partially or totally disabled.
7. ____. Earning capacity determinations should not be distorted by factors such as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his or her crippling handicaps.