Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/06/2023 09:04 AM CST

Shawn Wheelbarger, appellant, v.
Detroit Diesel ECM, LLC, a Michigan
limited liability company, and Mike
Rodriguez, doing business as M & C
Distributing, appellees.

___ N.W.2d ___

Filed January 6, 2023.    No. S-21-556.

1. **Motions to Dismiss: Jurisdiction: Evidence: Appeal and Error.**
When the hearing on a motion to dismiss for lack of personal jurisdiction falls short of an evidentiary hearing held in a matter similar to determining the issue at trial, the plaintiff is required only to make a prima facie showing of personal jurisdiction in order to survive the motion to dismiss and an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

2. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

3. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

4. **Constitutional Law: Due Process.** The Due Process Clause of the U.S. Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations.

5. **Jurisdiction: States.** The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state.

6. ____: ____. The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system.

7. **Due Process: Jurisdiction: States.** The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.

8. ____: ____: ____. The analysis of whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there is not simply mechanical or quantitative, but requires that a court consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process.

9. **Jurisdiction: States.** It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

10. ____: ____. There must be fair warning that a particular activity might subject the nonresident defendant to the jurisdiction of the foreign sovereign, giving a degree of predictability to the legal system by allowing potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

11. **Jurisdiction: Words and Phrases.** Specific personal jurisdiction requires that the specific cause of action at issue arise out of or is related to the defendant's contacts with the forum state; in other words, there must be an affiliation between the forum and the underlying controversy.

12. ____: ____. For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. This is determined at the time a suit is commenced.

13. **Jurisdiction: Time.** The requisite minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.

14. **Jurisdiction: States.** Contacts with Nebraska unrelated to the action brought have no bearing on a specific personal jurisdiction analysis.

15. ____: ____. Unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.

16. **Jurisdiction: States: Contracts: Parties.** Standing alone, neither the existence of a contract with a party in the forum state nor use of interstate communications are enough to support the necessary contacts for a finding of specific personal jurisdiction, but they are proper considerations in the overall analysis.

17. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. When dealing with contracts, it is the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, which must be evaluated in determining whether a defendant purposefully established minimum contacts within the forum.

18. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. Because minimum contacts depend on the activities of the defendant related to operative facts of the litigation and not on the unilateral actions taken by someone else, direct contacts between the independent contracting parties, which the intermediary is not involved in, do not create minimum contacts for the intermediary.

Petition for further review from the Court of Appeals, PIRTLE, Chief Judge, and REIDMANN and WELCH, Judges, on appeal thereto from the District Court for Buffalo County, JOHN H. MARSH, Judge. Judgment of Court of Appeals affirmed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

No appearance for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## I. INTRODUCTION

At issue in this appeal is whether the plaintiff made a prima facie showing of specific personal jurisdiction over the out-of-state defendants who facilitated the sale of allegedly defective software installed by a local mechanic in four of the plaintiff's trucks over a period of 2½ years. The defendants operate a business acting nationally as a "middleman" between mechanics and entities that create software to increase engine performance. Although the software company and the mechanic negotiate directly in determining the desired product and its price, billing goes through the defendants in order to collect a commission. Contact is initiated by mechanics through a website of the defendants.

## II. BACKGROUND

### 1. Complaint

Shawn Wheelbarger, a resident of Nebraska, operates a trucking business. He brought suit in Buffalo County, Nebraska, against Newcomb Diesel LLC (Newcomb), a Nebraska limited liability company operating a diesel mechanic business. Wheelbarger alleged Newcomb installed software in four of Wheelbarger's trucks from December 2013 through May 2016. Wheelbarger alleged the software caused mechanical problems leading to approximately $100,000 in repair bills and over $1 million in lost income. Wheelbarger's complaint against Newcomb was later dismissed with prejudice upon a joint motion and stipulation.

Under the same complaint, Wheelbarger also brought suit against Detroit Diesel ECM, LLC (Detroit Diesel), a Michigan limited liability company, and Mike Rodriguez, a resident of Michigan, doing business as M & C Distributing (M & C) (collectively Michigan Defendants). Wheelbarger asserted Michigan Defendants "operate businesses creating software to reprogram engine control modules in diesel trucks"; "designed, manufactured, marketed, sold, and placed on market the software installed in Wheelbarger's trucks"; and were "merchants with respect to the software installed in Wheelbarger's trucks."

Wheelbarger asserted against Michigan Defendants claims for strict liability, negligence, and breach of implied warranties. With respect to these claims, Wheelbarger alleged the software installed in his trucks was "defectively designed, manufactured, and/or labeled" and "unreasonably dangerous" for its intended or reasonably foreseeable use. Also, Michigan Defendants allegedly failed to (1) exercise reasonable care in "designing, manufacturing, and/or labeling the software"; (2) ensure the software installed in Wheelbarger's trucks was safe for its intended use; and (3) provide Wheelbarger "with adequate warning that the software installed in Wheelbarger's

trucks may damage Wheelbarger's trucks." Wheelbarger alleged Michigan Defendants knew or had reason to know the software was likely to be dangerous when used in its intended and foreseeable uses and Wheelbarger was a foreseeable user who reasonably relied on Michigan Defendants' skill or judgment to furnish software suitable for the particular purpose of safely and reliably operating his trucking business.

Wheelbarger acknowledged Michigan Defendants' principal place of business was in Michigan, but asserted the district court had personal jurisdiction because Michigan Defendants "market their products in the State of Nebraska and said products are the subject of this action."

## 2. Special Appearance and Motion to Dismiss

Michigan Defendants filed a special appearance and motion to dismiss, arguing they did not have sufficient minimum contacts with Nebraska to establish general or specific personal jurisdiction. A hearing on the motion was held.

### (a) Affidavit

An affidavit by Rodriguez was offered by Michigan Defendants in support of the motion and entered into evidence. Rodriguez averred Michigan Defendants did not create the subject software. Rather, the software installed in Wheelbarger's trucks was designed and provided by an unidentified third party. Rodriguez explained he and his wife jointly own Detroit Diesel and M & C, having operated their business through M & C until Detroit Diesel was incorporated. Their business is to act as a "'middleman'" connecting software designers with mechanics in need of software for semi-tractor engines to increase performance.

Once Rodriguez puts the mechanics in contact with a software designer, "all information relative to the job . . . is directly between the mechanic and the software designer" and the "software is directly sent from the software designer

electronically to the mechanic as I have no part in the delivery of the product."

Rodriguez' business makes money by collecting a commission for connecting the mechanics with the software designers. This is done by the software designer sending Rodriguez an invoice, after which Rodriguez "will add a profit margin to the invoice and re-invoice the mechanic." Rodriguez explained, "I am paid by the mechanic and I then remit payment to the software designer." In the transaction at issue, Rodriguez' business made a profit of $200. It is unknown what Newcomb paid for the software.

Rodriguez averred there was no written contract between Wheelbarger and either Detroit Diesel or M & C. Neither Detroit Diesel nor M & C maintained at any pertinent time any office or physical presence in Nebraska. Likewise, at all pertinent times, Michigan Defendants have not owned property in Nebraska; kept corporate records in Nebraska; or had any employees, officers, or directors in Nebraska. Michigan Defendants do not "generate any continual revenue in Nebraska."

Michigan Defendants have a website through which Rodriguez believed Newcomb contacted Rodriguez seeking his services in relation to Newcomb's work on Wheelbarger's trucks. He recollected that the first contact was in July 2014 and that the last contact was in March 2016. The website does not mention serving Nebraska or its residents. Rodriguez averred, "Although the instant case is not the only contact that I have had with [Newcomb] in seeking my services, all contacts . . . have been in the same scenario . . . ." Rodriguez did not elaborate on how many other such contacts had occurred. Rodriguez averred he had never had any correspondence with Wheelbarger.

(b) Answer to Interrogatory

At the hearing, the court also received an exhibit containing Newcomb's answer to an interrogatory asking Newcomb

to identify any companies that provided it with reprogramming software. Newcomb stated in its answer, "We purchased the software from M & C . . . to enable us to tune the ECM programming according to the customer's request." Newcomb described that M & C "sends the software remotely over the internet" and "[a]ll settings and parameter changes are done to customer preferences and explicit consent." The district court referred to the exhibit in its order on the motion to dismiss.

(c) Arguments

In a brief in opposition to the motion to dismiss, Wheelbarger explained that "[a]s against the Michigan Defendants, this is a products liability action." Wheelbarger asked the court to treat the matter as one decided on pleadings and affidavits, under which he was required to make only a prima facie showing of personal jurisdiction. In the event the court believed the evidence had converted the motion into a motion for summary judgment, Wheelbarger asked the court to continue the matter so he could present further evidence.

Wheelbarger conceded Michigan Defendants did not create the software that Newcomb installed in his trucks, but argued that by serving as a "middleman" sending the invoices to mechanics, they "supplied" it. He conceded the court lacked general personal jurisdiction over Michigan Defendants but argued the court had specific personal jurisdiction over Michigan Defendants.

Wheelbarger elaborated that Michigan Defendants either directly sent or directly facilitated sending software to Nebraska and knew they were doing so—indeed, they had been doing business with Newcomb for almost 2 years. This was distinct from it simply being generally predictable that through the stream of commerce, the subject software would reach Nebraska.

Michigan Defendants responded that their business relationship with Newcomb was "very brief, lasting approximately a year and a half." Given the passivity of their website, Michigan

Defendants argued such purchases did not create the substantial connection necessary for personal jurisdiction.

### (d) Order

The district court granted the motion to dismiss. It explained Wheelbarger needed only to make a prima facie showing of jurisdiction to survive Michigan Defendants' motion to dismiss, because the matter was submitted solely on the pleadings and supporting affidavits. It ultimately concluded, however, that Wheelbarger had failed to make a prima facie showing of jurisdiction. Focusing on the lack of contact between Wheelbarger and Michigan Defendants and the passivity of Michigan Defendants' website, the court found Michigan Defendants should not have reasonably anticipated being haled into court in Nebraska.

### 3. Nebraska Court of Appeals' Decision

The Nebraska Court of Appeals affirmed the district court's order dismissing the claims against Michigan Defendants for lack of personal jurisdiction.[1]

It quoted at length our opinion in *Abdouch v. Lopez*,[2] describing that, for internet jurisdiction cases, the Eighth Circuit, like the majority of circuit courts, has adopted the analytical framework set forth in the memorandum opinion of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*[3] *Zippo Mfg. Co.* sets forth a sliding scale where at one end there is personal jurisdiction because a "defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" and at the "opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible

---

[1] *Wheelbarger v. Detroit Diesel*, 31 Neb. App. 145, 978 N.W.2d 334 (2022).

[2] *Abdouch v. Lopez*, 285 Neb. 718, 829 N.W.2d 662 (2013).

[3] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

to users in foreign jurisdictions."[4] In the middle ground are websites where a user can exchange information with the host computer and "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[5]

The Court of Appeals quoted our statement in *Abdouch* that the *Zippo Mfg. Co.* "'sliding scale of interactivity test'" is recognized by most circuits "'only as a starting point.'"[6] A defendant cannot be haled into court simply because a website is "highly interactive."[7] Traditional statutory and constitutional principles, including territorial limitations on the power of the respective States, remain the touchstone of the inquiry.[8]

The Court of Appeals reasoned that Michigan Defendants "simply responded to Newcomb['s] inquiry" through its passive website.[9] Michigan Defendants did not negotiate, contract for, or sell the software. Michigan Defendants "simply facilitated the request for the product to a third party who negotiated and supplied the product to Newcomb."[10]

The Court of Appeals noted that "[t]he causes of action deal directly with alleged problems with that product, the nature of which was separately negotiated with the software developer and Newcomb . . . based on Wheelbarger's expectations."[11] The Court of Appeals found that, under the circumstances, Michigan Defendants lacked sufficient minimum contacts to have reasonably anticipated being haled into court in Nebraska. We granted Wheelbarger's petition for further review.

---

[4] *Id.* at 1124.

[5] *Id.*

[6] *Wheelbarger v. Detroit Diesel, supra* note 1, 31 Neb. App. at 156, 978 N.W.2d at 344, quoting *Abdouch v. Lopez, supra* note 2.

[7] *Id.* (internal quotation marks omitted).

[8] See *Wheelbarger v. Detroit Diesel, supra* note 1.

[9] *Id.* at 160, 978 N.W.2d at 346.

[10] *Id.*

[11] *Id.*

## III. ASSIGNMENTS OF ERROR

Wheelbarger assigns that the Court of Appeals erred in (1) failing to correctly apply the standard of review by looking at the facts in the light most favorable to Wheelbarger and (2) concluding that Nebraska courts lacked jurisdiction over the Michigan Defendants due to an overreliance on or misapplication of the *Zippo Mfg. Co.* test.

## IV. STANDARD OF REVIEW

[1] When the hearing on a motion to dismiss for lack of personal jurisdiction falls short of an evidentiary hearing held in a matter similar to determining the issue at trial, the plaintiff is required only to make a prima facie showing of personal jurisdiction in order to survive the motion to dismiss and an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.[12]

[2] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[13]

## V. ANALYSIS

On appeal, as he did below, Wheelbarger focuses on his products liability claim and argues Michigan Defendants' direct involvement with Newcomb in facilitating multiple contacts with the software developer and billing for the sales established specific personal jurisdiction. He argues the Court of Appeals disregarded Newcomb's answer to the interrogatory stating M & C sent the software to it, failed to view the facts in the light most favorable to Wheelbarger, and placed undue reliance on the passivity of Michigan Defendants' website under

---

[12] See, *Yeransian v. Willkie Farr*, 305 Neb. 693, 942 N.W.2d 226 (2020); *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014).

[13] *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

the *Zippo Mfg. Co.* test for personal jurisdiction when the case involved direct business dealings.

[3] Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[14] Because our long-arm statute[15] confers personal jurisdiction over non-residents to the fullest extent constitutionally permitted, the inquiry here is whether Michigan Defendants had sufficient minimum contacts with Nebraska so that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.[16]

[4-6] The Due Process Clause of the U.S. Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations.[17] The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state.[18] The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system.[19]

[7,8] The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.[20] This analysis is not simply mechanical or quantitative, but requires that we consider the quality and nature of

---

[14] *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013).

[15] Neb. Rev. Stat. § 25-536 (Reissue 2016).

[16] See *Yeransian v. Willkie Farr, supra* note 12.

[17] *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

[18] *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004).

[19] See *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018).

[20] *Kugler Co. v. Growth Products Ltd., supra* note 17.

the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process.[21]

[9,10] It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.[22] This requirement ensures that a defendant will not be subject to litigation in a jurisdiction solely due to random, fortuitous, or attenuated contacts.[23] There must be fair warning that a particular activity might subject the nonresident defendant to the jurisdiction of the foreign sovereign, giving a degree of predictability to the legal system by allowing potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.[24]

[11-14] Specific personal jurisdiction requires that the specific cause of action at issue arise out of or is related to the defendant's contacts with the forum state; in other words, there must be an affiliation between the forum and the underlying controversy.[25] For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.[26] This is determined at the time a suit is commenced. The requisite minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or

---

[21] *Id*. See, also, *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

[22] *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra* note 19.

[23] *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998).

[24] See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). See, also, e.g., *Quality Pork Internat. v. Rupari Food Servs., supra* note 18.

[25] See *Yeransian v. Willkie Farr, supra* note 12.

[26] *Id*.

within a reasonable period of time immediately prior to the filing of the lawsuit.[27] Contacts with Nebraska unrelated to the action brought have no bearing on a specific personal jurisdiction analysis.[28]

[15-17] Unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.[29] Standing alone, neither the existence of a contract with a party in the forum state nor use of interstate communications are enough to support the necessary contacts for a finding of specific personal jurisdiction, but they are proper considerations in the overall analysis.[30] When dealing with contracts, it is the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, which must be evaluated in determining whether a defendant purposefully established minimum contacts within the forum.[31]

Applying these principals, where there has been "protracted business" related to the action involving "substantial and numerous purchases" and communications, we have found minimum contacts supporting specific personal jurisdiction.[32] In *VKGS v. Planet Bingo*, [33] for example, we held there was specific personal jurisdiction in an action for declaratory judgment as to rights under agreements between a Nebraska business and an out-of-state software company with which there had been monthly communications involving seven separate contracts over the course of 6 years. We said the nonresident defendant, although having never physically entered Nebraska,

---

[27] *Id.*

[28] See *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra* note 19.

[29] *Crete Carrier Corp. v. Red Food Stores, supra* note 23.

[30] See *id*.

[31] *VKGS v. Planet Bingo, supra* note 14.

[32] *McGowan Grain v. Sanburg*, 225 Neb. 129, 142, 403 N.W.2d 340, 349 (1987).

[33] *VKGS v. Planet Bingo, supra* note 14.

deliberately reached out beyond its home state to voluntarily create a long-term relationship with and assume obligations toward a Nebraska company.

Likewise, in *Crete Carrier Corp. v. Red Food Stores*,[34] we held, in an action for indemnification under a transportation contract, that there was personal jurisdiction over the nonresident defendant as a result of the ongoing contractual relationship over a period of 5 years and over 2,000 contacts placing orders and verifying deliveries during the 2-year period of the relevant contract. Similarly, in *Kugler Co. v. Growth Products Ltd.*,[35] we held, in an action by a local agricultural company for breach of contract and warranties, that minimum contacts supported specific personal jurisdiction over the nonresident seller of nitrogen products when the local company had initially reached out to the nonresident corporation after seeing an advertisement in a trade journal and they developed an ongoing relationship surrounding a substantial amount of product purchased by the local company from the nonresident corporation over the course of 7 years. Additionally, there were numerous communications relating to the local company ultimately becoming an assigned distributor of the nonresident corporation's products. We explained that the situation was a far cry from "an isolated sale to a Nebraska citizen."[36]

On the other hand, because the minimum contacts analysis is not simply mechanical or quantitative, but requires that we consider the quality and nature of the defendant's activities, there have been occasions where a single contract is deemed sufficient because a substantial connection was created.[37] To illustrate, we have found sufficient minimum contacts where the singular contract created a substantial ongoing

[34] *Crete Carrier Corp. v. Red Food Stores, supra* note 23.

[35] *Kugler Co. v. Growth Products Ltd., supra* note 17.

[36] *Id.* at 513, 658 N.W.2d at 48.

[37] See *Kugler Co. v. Growth Products Ltd., supra* note 17.

relationship between a franchisor and a franchisee.[38] We have also found sufficient minimum contacts under a single contract where the nonresident defendant has acted as a guarantor for the transaction in question,[39] thereby "purposefully reach[ing] out to induce a particular action within the forum state."[40] Finally, we have found sufficient minimum contacts under a contract by a nonresident attorney to provide legal services when such services were rendered by the attorney in Nebraska, appearing pro hac vice and participating at length in filings and hearings in a Nebraska court.[41] These instances are in contrast to *Roth Grading v. Martin Bros. Constr.*,[42] wherein the Court of Appeals held minimum contacts were lacking in an action for breach of a purchase agreement, when the contact between the parties was limited to the subject transaction by the Nebraska company to sell, for approximately $140,000, a single piece of heavy equipment to the nonresident defendant.

[18] We have not addressed minimum contacts by an intermediary who introduced parties that independently negotiated and entered into the underlying contracts. However, because minimum contacts depend on the activities of the defendant related to the operative facts of the litigation and not on the unilateral actions taken by someone else,[43] direct contacts between the independent contracting parties, which the intermediary is not involved in, do not create minimum contacts

---

[38] See *Castle Rose v. Philadelphia Bar & Grill*, 254 Neb. 299, 576 N.W.2d 192 (1998).

[39] See, *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra* note 19; *Quality Pork Internat. v. Rupari Food Servs., supra* note 18.

[40] *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra* note 19, 298 Neb. at 731, 905 N.W.2d at 665.

[41] See *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999). But see *Yeransian v. Willkie Farr, supra* note 12.

[42] *Roth Grading v. Martin Bros. Constr.*, 25 Neb. App. 928, 916 N.W.2d 70 (2018).

[43] See, *Crete Carrier Corp. v. Red Food Stores, supra* note 23; 4 American Law of Products Liability 3d § 48:82 (2014).

for the intermediary. We have held that even the acts of pred-ecessor corporations have no bearing on the requisite mini-mum contacts over the defendant successor corporation, absent express adoption of the predecessor's liabilities.[44] For example, in *RFD-TV v. WildOpenWest Finance*,[45] we found the defendant successor corporation lacked minimum contacts for purposes of an action on a 5-year contract entered into by the local plaintiff with a nonresident predecessor corporation. Contacts between the parties consisted of the nonresident successor cable television provider sending, based on terms negotiated by the predecessor corporation, monthly licensing fees to the local programming service over the course of 2 years. The television provider also occasionally communicated remotely with the programming service's employees to discuss and pay invoices. We summarized that the "actual business dealings" between the actual parties were "extremely limited."[46]

As the Court of Appeals pointed out,[47] the Florida district court opinion in *Miller v. Berman*[48] is instructive as to the more specific scenario of a nonresident defendant who acts as an independent intermediary to the contracting parties. In an action for negligent misrepresentation, breach of express war-ranty, false advertising, and joint venture liability, the court in *Miller* held that the plaintiff's forum lacked personal jurisdic-tion over the nonresident broker and exclusive distributor of a certain foreign yacht manufacturer. The broker had been contacted by the plaintiff through the broker's website. When it became apparent the plaintiff wished to purchase a highly customized yacht that was beyond the scope of the broker's distributorship, the broker advised the plaintiff to negotiate

[44] *RFD-TV v. WildOpenWest Finance, supra* note 12. See *Nimmer v. Giga Entertainment Media, supra* note 13.

[45] *RFD-TV v. WildOpenWest Finance, supra* note 12.

[46] *Id.* at 328, 849 N.W.2d at 116.

[47] See *Wheelbarger v. Detroit Diesel, supra* note 1.

[48] *Miller v. Berman*, 289 F. Supp. 2d 1327 (M.D. Fla. 2003).

directly with the foreign yacht manufacturer. The plaintiff did and entered into a contract directly with the yacht manufacturer. The broker accepted a commission on the sale. The court in *Miller* reasoned that, based upon the limited nature of the exchange between the parties over the internet and the broker's website, the broker did not purposefully direct business activities toward the forum state.

The claim for which Wheelbarger asserts there is specific personal jurisdiction over Michigan Defendants is for products liability in relation to the software Newcomb installed in four of Wheelbarger's trucks over the course of 2½ years. There is no dispute that Michigan Defendants had no direct contacts with Wheelbarger. There is no dispute that Michigan Defendants did not design the software at issue and did not participate directly with Newcomb in negotiations relative to the creation of software. Michigan Defendants' relationship with Newcomb began when Newcomb reached out to Michigan Defendants upon finding their website advertising their services as a "middleman" who connects software designers with mechanics. Michigan Defendants sent the invoices for the software to Newcomb and accepted payment directly from Newcomb, after which Michigan Defendants remitted the payment, minus the commission, to the unidentified software designer. Viewing the exhibits in a light most favorable to Wheelbarger, we determine Michigan Defendants electronically delivered the software to Newcomb as well.

Although, unlike in *Miller*, this case allegedly involves four transactions rather than one, it is similar to *Miller* in the limited nature of the relevant contacts.[49] It is also similar to our cases dealing with successor entities participating in multiple underlying transactions because the actual business dealings between Michigan Defendants and Newcomb were extremely limited. It does not involve, as in many of our cases finding personal jurisdiction, protracted business. And

---

[49] See *id.*

the actual business dealings between Michigan Defendants and Wheelbarger were nonexistent.

We agree with the Court of Appeals and the lower court that the quality and nature of Michigan Defendants' activities related to the action brought against them by Wheelbarger do not support personal jurisdiction. Even if Michigan Defendants electronically transferred the software to Newcomb, Michigan Defendants' contacts were too attenuated for Michigan Defendants to have purposefully established minimum contacts within Nebraska.

## VI. CONCLUSION

For these reasons, we affirm the decision of the Court of Appeals affirming the district court's dismissal of Michigan Defendants for lack of personal jurisdiction.

AFFIRMED.