Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/24/2020 08:08 AM CDT

Thomas Yeransian, in his capacity as the
representative of certain contingent value
rights under the Contingent Value Rights
Agreement dated October 15, 2010,
appellant, v. Willkie Farr &
Gallagher LLP, appellee.
___ N.W.2d ___

Filed May 1, 2020.    No. S-19-320.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.
2. **Jurisdiction: Pleadings: Appeal and Error.** An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.
3. **Evidence: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.
6. **Due Process: Jurisdiction: States.** Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.
7. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any

contact with or maintaining any relation to this state as far as the U.S. Constitution permits.

8. **Jurisdiction: States: Legislature: Intent.** It was the intention of the Legislature to provide for the broadest allowable jurisdiction over non-residents under Nebraska's long-arm statute.

9. **Due Process: Jurisdiction: States.** When a state construes its long-arm statute to confer jurisdiction to the fullest extent constitutionally permitted, the inquiry collapses into the single question of whether jurisdiction comports with due process.

10. **Jurisdiction: States.** To constitute sufficient minimum contacts, a defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.

11. **Jurisdiction: States: Appeal and Error.** In analyzing personal jurisdiction, an appellate court considers the quality and type of the defendant's activities and determines whether the nonresident defendant's actions create substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.

12. **Jurisdiction: States.** A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.

13. **Jurisdiction.** General personal jurisdiction arises where a defendant's affiliations with a state are so continuous and systematic as to render the defendant essentially at home in the forum state.

14. **Jurisdiction: Words and Phrases.** Specific personal jurisdiction requires that a claim arise out of or relate to the defendant's contacts with the forum.

15. **Jurisdiction.** A defendant need not be at home in the forum state to be subject to specific personal jurisdiction, but, rather, there must be an affiliation between the forum and the underlying controversy.

16. **Jurisdiction: Words and Phrases.** Specific personal jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

17. **Jurisdiction: Time.** Specific personal jurisdiction is determined at the time a suit is commenced, and minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.

18. **Jurisdiction: Words and Phrases.** For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.

19. **Jurisdiction: States: Contracts.** While contractual agreements may be relevant to consideration of minimum contacts that support jurisdiction,

the existence of a contract with a party in a forum state does not, in and of itself, provide the necessary contacts for personal jurisdiction.

20. \_\_\_\_: \_\_\_\_: \_\_\_\_. To determine whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a court is to consider the parties' prior negotiations and future contemplated consequences, along with the terms of the contract and the parties' actual course of dealing.

21. \_\_\_\_: \_\_\_\_: \_\_\_\_. To determine whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a court looks to whether the contracting party has created continuing relationships and obligations with citizens of another state.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

James D. Sherrets, Diana J. Vogt, and James L. Schneider, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Steven D. Davidson, of Baird Holm, L.L.P., for appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

Thomas Yeransian appeals the district court's order dismissing his complaint against the law firm of Willkie Farr & Gallagher LLP (Willkie). Willkie had represented Aspen Holdings, Inc. (Aspen), in 2009 and 2010, when Aspen merged with and was acquired by Markel Corporation (Markel). Yeransian, as a representative of Aspen's former shareholders, brought suit against Willkie to obtain the Aspen attorney-client file for the former shareholders' dispute with Markel over payments from the merger. The district court found Willkie did not have the requisite minimal contacts with Nebraska for the court to have personal jurisdiction over it. Alternatively, the court found that Yeransian failed to present a claim upon which relief can be granted because Willkie had represented Aspen, and not its shareholders, and that Markel, as the surviving entity, was entitled to control of the file. Yeransian challenges both grounds. For the reasons set forth herein, we affirm.

## BACKGROUND

Willkie is an international law firm with its principal place of business in New York, New York. Willkie does not have a Nebraska office.

In 2009 and 2010, Willkie represented Aspen, a Delaware corporation with its principal place of doing business in Nebraska, in Aspen's merger with Markel, a Virginia corporation. At the time of the merger and now, some of Aspen's shareholders reside in Nebraska. For the purpose of this representation, Willkie and Aspen entered into an engagement letter whereby Willkie stated that the client would be "Aspen Holdings, Inc.," and explained that "[t]his engagement does not create an attorney-client relationship with any related persons or entities, such as parents, subsidiaries, affiliates, employees, officers, directors, shareholders or partners."

In July 2010, Aspen and Markel agreed to the terms of the merger and executed an "Agreement and Plan of Merger" (Merger Agreement). In October 2010, Aspen and Markel also executed a "Contingent Value Rights Agreement" (CVR Agreement). Pursuant to the Merger Agreement, the merger transaction closed later in 2010. Under both the CVR Agreement and the Merger Agreement, the parties elected to have Delaware law govern.

Under the CVR Agreement, each share of Aspen's common stock and option was converted into the right to receive, among other compensation, certain contingent payments. This right had an initial principle value which was to be subjected to adjustment depending on factors set out by the CVR Agreement. Markel was periodically required to provide the holders of certain CVR rights (CVR Holders) certain information relevant to this changing value. The CVR Agreement designated a representative to act on behalf of the CVR Holders (Holder Representative), including granting this representative the authority to enforce any claim against Markel arising under the CVR Agreement. When Markel was required to provide any notice under the CVR Agreement to the CVR

Holders, the agreement specified that such notice be sent to the Holder Representative "with a copy (which shall not constitute notice)" sent to Willkie.

Yeransian alleges he is the current Holder Representative. In September 2016, on behalf of the CVR Holders, Yeransian filed suit against Markel in the U.S. District Court for the District of Delaware. In the suit, Yeransian alleged that Markel violated its obligations under the CVR Agreement and sought payment of the unpaid benefits. Yeransian claimed that there were ambiguities in the CVR Agreement and requested Willkie's attorney-client file with Aspen to aid in resolution of the ambiguities. Upon request, however, Willkie refused to provide the file, citing attorney-client privilege.

In July 2018, Yeransian initiated the instant action in the district court for Douglas County, Nebraska, by filing a complaint against Willkie to acquire its Aspen file. The complaint's claims included the following: (1) Willkie breached its contract for representation of Aspen, (2) Willkie breached its fiduciary duty to the CVR Holders under the CVR Agreement, and (3) restitution should be ordered for costs associated with the return of the file. Yeransian alleged that the Nebraska district court is a proper venue for these claims because Aspen's principal place of business was in Omaha, Nebraska; Willkie represented Aspen in 2009 and 2010 during the merger and in connection with the CVR Agreement; Willkie maintained regular contact with Aspen officers and employees in Douglas County in furtherance of this representation; and a substantial number of the CVR Holders continue to reside in Nebraska.

Willkie filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim for which relief can be granted. Willkie claimed Markel is the rightful possessor of this file, because Willkie represented Aspen, not its shareholders, and Markel absorbed Aspen in the 2010 merger. Willkie asserted Markel acquired all property, rights, privileges, powers, and franchises of Aspen, including Willkie's Aspen file on the merger. Accordingly,

Willkie argued Yeransian should submit its request for the file to Markel.

The district court granted Willkie's motion and dismissed Yeransian's claims. First, the court found Yeransian's complaint failed to allege Willkie had the requisite minimum contacts with the State of Nebraska and that, as such, the court did not have personal jurisdiction over Willkie. The court disagreed that Willkie's representation of Aspen could be used as a basis for personal jurisdiction, explaining that any contacts which may have arisen in 2009 and 2010 have long ceased before any cause of action arose based on Willkie's declining to provide Yeransian the file. Additionally, the court held that those potential contacts with the State existed between Willkie and Aspen as a corporate entity and not Aspen's individual shareholders. Even if there was personal jurisdiction, the court found Yeransian's complaint also failed to state a claim upon which relief could be granted because Willkie's client was Aspen and not Aspen's shareholders, which meant Markel, as the surviving entity, was the rightful owner of the file.

## ASSIGNMENTS OF ERROR

Yeransian assigns, restated, that the district court erred in (1) finding the court lacked personal jurisdiction over Willkie, (2) denying an initial discovery request on the issue of personal jurisdiction, (3) implying that Yeransian lacked standing, and (4) finding Yeransian failed to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[1] Similarly, an appellate court examines the question of whether the nonmoving party

---

[1] *Patterson v. Metropolitan Util. Dist.*, 302 Neb. 442, 923 N.W.2d 717 (2019).

has established a prima facie case of personal jurisdiction de novo.[2]

[3,4] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[3] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[4]

## ANALYSIS

### Personal Jurisdiction

[5,6] Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[5] Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[6]

[7-9] Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.[7] It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.[8] When, as here, a state construes its long-arm statute to confer jurisdiction to the fullest extent constitutionally permitted, the inquiry collapses into the single

---

[2] *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

[3] *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[4] *Id*.

[5] *Nimmer, supra* note 2.

[6] *Id*.

[7] Neb. Rev. Stat. § 25-536 (Reissue 2016).

[8] *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013).

question of whether jurisdiction comports with due process.[9] Therefore, the issue is whether Willkie had sufficient minimum contacts with Nebraska so that the exercise of personal jurisdiction would not offend the traditional notions of fair play and substantial justice.[10]

[10,11] To constitute sufficient minimum contacts, a defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.[11] In analyzing personal jurisdiction, we consider the quality and type of the defendant's activities and determine whether the nonresident defendant's actions create substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.[12]

[12-14] A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.[13] General personal jurisdiction arises where a defendant's affiliations with a state are so continuous and systematic as to render the defendant essentially at home in the forum state.[14] Specific personal jurisdiction, in turn, requires that a claim arise out of or relate to the defendant's contacts with the forum.[15]

Yeransian's arguments are solely based upon Willkie's presence within Nebraska during the Aspen and Markel merger. It is undisputed that Willkie's principal place of business is in New York and that it does not have a Nebraska office. Further,

---

[9] See *id*.

[10] See *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018).

[11] *Id*.

[12] See *Nimmer, supra* note 2.

[13] *Id*.

[14] See *Hand Cut Steaks Acquisitions, supra* note 10.

[15] See *id*.

there are no allegations that Willkie has had a Nebraska presence outside of its work surrounding the merger. Accordingly, there is an insufficient basis to establish general personal jurisdiction and the issue before us is whether the district court had specific personal jurisdiction over Willkie.

[15-18] A defendant need not be at home in the forum state to be subject to specific personal jurisdiction, but, rather, there must be an affiliation between the forum and the underlying controversy.[16] Specific personal jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.[17] This inquiry is determined at the time a suit is commenced, and minimum contacts must exist either at the time the cause of action arose, at the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.[18] Thus, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation.[19]

Yeransian alleges Willkie created a substantial connection with Nebraska in the current subject matter through its work surrounding the 2010 merger and its drafting of the CVR Agreement. Yeransian's argument centers on the allegation that by drafting the CVR Agreement, Willkie entered into a contractual relationship that envisioned continuing contacts in Nebraska due to Aspen's previous presence and the CVR Holders' continued residency in the forum state.

[19-21] However, the CVR Agreement does not supply the contacts necessary to establish a continuing substantial connection. While contractual agreements may be relevant to consideration of minimum contacts that support jurisdiction, the existence of a contract with a party in a forum state does not, in and of itself, provide the necessary contacts for personal

---

[16] *Id.*

[17] *Id.*

[18] See *Nimmer, supra* note 2.

[19] *Hand Cut Steaks Acquisitions, supra* note 10.

jurisdiction.[20] To determine whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a court is to consider the parties' prior negotiations and future contemplated consequences, along with the terms of the contract and the parties' actual course of dealing.[21] A court looks to whether the contracting party has created continuing relationships and obligations with citizens of another state.[22]

We begin by noting that Willkie was not a party to the CVR Agreement. Willkie participated in the process as a representative of Aspen. Willkie has no continuing obligations under the terms of the CVR Agreement. Any continuing relationship from the agreement would have extended to Aspen, which ceased to be an entity due to its merger with Markel in 2010.

Additionally, Willkie has no obligations to the CVR Holders extending from Willkie's agreement to represent Aspen in the merger process. Willkie's representation was limited to Aspen as the corporate entity and explicitly did not extend to Aspen's shareholders. This representation is detailed in the engagement letter, signed by an Aspen representative, stating that Willkie's client would be "Aspen Holdings, Inc.," and stipulating that "[t]his engagement does not create an attorney-client relationship with any related persons or entities, such as . . . shareholders . . . ."

Contrary to the clear language of the engagement letter, Yeransian alleges that Willkie represented Aspen's shareholders during the merger and has continued to represent them as the CVR Holders. To support this claim, Yeransian points to the provision of the CVR Agreement which directs Markel to send any required notices to the Holder Representative "with a

---

[20] See, *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014); *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

[21] *Hand Cut Steaks Acquisitions, supra* note 10; *Nimmer, supra* note 2.

[22] See *Kugler Co., supra* note 20. See, also, *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

copy (which shall not constitute notice)" sent to Willkie. Citing this provision, Luke Yeransian, a former founder and chief executive officer of Aspen, stated in an affidavit that it was his understanding that "Willkie Farr remained as counsel for the [CVR] Holders following the conclusion of the merger."

The CVR Agreement's notice provision instructing Markel to send a copy of notices under the agreement to Willkie is insufficient to indicate Willkie had any sort of attorney-client relationship with Aspen's previous shareholders or that its representation of Aspen would continue until the expiration of the CVR Agreement. The notice provision does not label Willkie as the CVR Holders' representative nor does it indicate that such copy is due to an existing or impending attorney-client relationship with the CVR Holders. While the notice provision directed that a copy of notices sent to the Holder Representative also be sent to Willkie, it specified that such copy would not constitute notice. The mere proximity of the requirement of notice to the Holder Representative and Willkie does not, without more, establish an attorney-client relationship to the CVR Holders or evidence an existing one.

Similarly, citing only the notice provision, Luke Yeransian contended that the provision created an attorney-client relationship with the CVR Holders. However, no evidence was offered that either party acted upon this alleged relationship such as the CVR Holders' paying Willkie any fees or retainers for services, communications about the alleged representation between Willkie and any CVR Holders, or correspondence from any CVR Holder to Willkie about initiating the pending suit against Markel. Yeransian makes no allegations outlining Willkie's authority to act on the CVR Holders' behalf or the parameters of any sort of advisory role Willkie might have had with the CVR Holders. While Yeransian asks for discovery to obtain Willkie's documents concerning Willkie's representation of Aspen, the motion did not seek to uncover evidence of an agreement between Willkie and the CVR Holders. Instead,

the discovery only sought evidence of Willkie's exposure to Nebraska during its representation of Aspen. Even if Yeransian was seeking discovery to uncover evidence of the alleged representation arrangement between Willkie and the CVR Holders, it is unclear why the Holder Representative and the CVR Holders would not have additional evidence beyond the notice provision of the CVR Agreement of such an arrangement. Accordingly, Luke Yeransian's reading of the CVR Agreement's notice provision is also insufficient to establish Willkie had an attorney-client relationship with the CVR Holders.

As explained, Willkie was not a party to the CVR Agreement or the merger. The notice provision of the CVR Agreement was insufficient to demonstrate or create an attorney-client relationship between Willkie and the CVR Holders. Willkie's engagement letter, signed by a representative of Aspen, explained Willkie and Aspen's attorney-client relationship and specified that Willkie represented Aspen as a corporate entity and did not represent Aspen's shareholders. Willkie's relationship with Nebraska was through its representation of Aspen, which did have a presence in Nebraska but which is no longer an entity. Now, neither Willkie nor Aspen have any continuing obligations under the CVR Agreement. Instead, the CVR Agreement requires Markel to pay the CVR Holders according to existing valuations of certain Markel activities. As the district court correctly found, Willkie's representation of Aspen in the 2010 merger did not extend to the CVR Holders and is insufficient to establish a continuing substantial connection between Willkie and Nebraska under the operative facts of the current litigation.

Yeransian also takes issue with the lower court's consideration of the time difference between Willkie's representation of Aspen during the 2010 merger and Yeransian's seeking the attorney-client file in 2016, asserting the court created an "expiration date [for] specific jurisdiction analysis."[23]

---

[23] Brief for appellant at 14.

Yeransian misconstrues the court's analysis. Instead of applying an expiration date, the court was addressing Yeransian's argument that the CVR Agreement created a substantial connection between Willkie and Nebraska under the operative facts of the litigation. The court correctly considered that Willkie did not represent the shareholders. The court also correctly considered that even though Willkie represented Aspen in the 2010 merger that produced the CVR Agreement, that any relationship this representation may have had on the CVR Holders' rights under the agreement was too attenuated from Willkie due to a lack of privity of contract and the length of time since Willkie's participation.

Further, despite Willkie's having no attorney-client relationship with the CVR Holders and no continuing obligations under the CVR Agreement, Yeransian claims Willkie has a continuing substantial connection with Nebraska because the CVR Holders are the current, rightful owners of Willkie's attorney-client file as the previous shareholders to Aspen and they continue to reside within the state.

This argument incorrectly presumes the CVR Holders are the current, rightful owners of the 2010 merger file. Aspen was incorporated under the laws of Delaware, and in the merger documents, the parties elected to have Delaware law apply. Under Delaware "General Corporation Law," upon consummation of a merger, "all property, rights, privileges, powers, and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation."[24] "[A]ll . . . privileges" necessarily encompasses an attorney-client privilege and "all property" necessarily encompasses documentation of all premerger communications pursuant to an attorney-client privilege, including those communications relating to the negotiation of the merger itself.[25]

---

[24] Del. Code tit. 8, § 259 (2020).

[25] See *Great Hill Equity v. SIG Growth Equity Fund*, 80 A.3d 155 (Del. Ch. 2013).

As such, Markel, as the surviving corporation, is the current, rightful owner of Willkie's attorney-client file on Aspen's 2010 merger. Yeransian's argument that Willkie has a continuing presence in Nebraska because the CVR Holders reside in Nebraska and are the current, rightful owners of Willkie's attorney-client file with Aspen is, therefore, without merit.

In consideration of all of the above, Yeransian failed to establish a continuing substantial connection under the operative facts of the litigation to establish Willkie has sufficient minimum contacts with Nebraska for the exercise of specific personal jurisdiction.

## JURISDICTIONAL DISCOVERY

Yeransian also assigns the district court erred in denying his motion regarding jurisdictional discovery. He argues that if discovery had been granted, he could have obtained further evidence of Willkie's representation of Aspen and Willkie's presence in Nebraska through that representation.

Yeransian does not contend that such discovery would produce evidence of an agreement for representation between Willkie and the CVR Holders or evidence of additional continuing obligations to show Willkie had a continuing substantial presence in Nebraska. Even if Yeransian did seek evidence of an alleged arrangement where Willkie also represented the CVR Holders, he fails to allege why the CVR Holders would not already have such evidence. Instead, the evidence Yeransian sought concerned only Willkie's representation of Aspen at the time of the merger, which representation and its presence in Nebraska is uncontested by Willkie. Accordingly, the district court did not abuse its discretion in denying Yeransian's motion to conduct discovery in order to prove these unchallenged allegations.[26]

---

[26] See, *Lombardo, supra* note 3; *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

## CONCLUSION

The district court did not err in denying Yeransian's motion for discovery and granting Willkie's motion to dismiss Yeransian's complaint for lack of personal jurisdiction. Because the district court correctly determined it lacked jurisdiction, we need not address Yeransian's remaining assignments.

AFFIRMED.

MILLER-LERMAN, J., not participating.