Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

Central States Development, LLC, and
Saint James Apartment Partners, LLC,
appellants, v. Elizabeth Friedgut
and DLA Piper, LLP, appellees.

___ N.W.2d ___

Filed November 18, 2022.    No. S-21-818.

1. **Motions to Dismiss: Jurisdiction: Pleadings: Evidence.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.

2. **Jurisdiction: Appeal and Error.** An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

3. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

4. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

5. **Due Process: Jurisdiction: States.** Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

6. **Jurisdiction: States: Legislature: Intent.** It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.

7. **Due Process: Jurisdiction: States.** When a state construes its long-arm statute to confer jurisdiction to the fullest extent constitutionally

permitted, the inquiry collapses into the single question of whether jurisdiction comports with due process.

8. **Jurisdiction: States.** To constitute sufficient minimum contacts, a defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.

9. ____: ____. A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.

10. **Jurisdiction.** General personal jurisdiction arises where a defendant's affiliations with a state are so continuous and systematic as to render the defendant essentially at home in the forum state.

11. **Jurisdiction: Words and Phrases.** Specific personal jurisdiction requires that a claim arise out of or relate to the defendant's contacts with the forum.

12. ____: ____. For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.

13. ____: ____. Specific personal jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

14. **Jurisdiction: States: Contracts.** The existence of a contract with a party in a forum state does not, in and of itself, provide the necessary contacts for personal jurisdiction.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Richard P. McGowan, of McGowan Law Firm, P.C., L.L.O., for appellants.

Joseph S. Daly and Mary M. Schott, of Evans & Dixon, L.L.C., and Martin J. O'Hara, of Much Shelist, P.C., pro hac vice, for appellees.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

### INTRODUCTION

Central States Development, LLC (Central States), and Saint James Apartment Partners (SJ Apartment) appeal the dismissal

of their complaint against Elizabeth Friedgut and the law firm of DLA Piper, LLP.

Friedgut, as an employee of DLA Piper, represented Central States and SJ Apartment in a dispute with the U.S. Department of Housing and Urban Development (HUD). Central States and SJ Apartment sued Friedgut and DLA Piper in connection with that representation, alleging legal malpractice. The district court found Friedgut and DLA Piper did not have the requisite minimum contacts with Nebraska for the court to have personal jurisdiction. Central States and SJ Apartment appeal. For the reasons set forth herein, we affirm.

## BACKGROUND

Central States is a limited liability company operating in Nebraska and elsewhere. Its activities include developing and managing low- and moderate-income housing. Central States owns and operates apartment complexes that contract with HUD. HUD provides funds to Central States through "Housing Assistance Payment" (HAP) contracts that amount to all or a significant portion of a tenant's rent. Resultingly, a specific complex's primary source of revenue can consist of these payments by HUD rather than payments by tenants.

SJ Apartment is a Nebraska limited liability company. At all relevant times, Central States was the managing member of SJ Apartment and John Foley was the sole manager of Central States. Foley created SJ Apartment to acquire and develop an Omaha, Nebraska, apartment complex known as St. James Manor.

The prior owner of St. James Manor operated the complex in connection with a HAP contract. Central States and SJ Apartment applied for and were awarded tax credits from the Nebraska Investment Finance Authority to buy and develop St. James Manor. As part of the project, the prior owner assigned its interest in its HAP contracts for the property to SJ Apartment.

Foley solicited Friedgut's legal representation in order to obtain HUD's approval of the HAP assignment. Friedgut's

practice focused on federal law, and she had experience working as legal counsel at HUD and with HAP contracts. Central States had a preexisting relationship with Friedgut insofar as it had initially retained her after its Missouri-based mortgage lender recommended it seek her services on an issue involving another property. Foley initially contacted Friedgut for assistance with a HUD-related issue involving a property in Iowa. He did so by calling her office in Chicago, Illinois.

Friedgut is a resident of Illinois and a former employee of DLA Piper's office in Chicago, Illinois. Central States and SJ Apartment's allegations concern Friedgut's representation of them while she was an employee of DLA Piper. Friedgut has never been licensed to practice law in Nebraska, has never been admitted pro hac vice in Nebraska, and has never appeared in any Nebraska court. Friedgut stated in her affidavit that she represented Central States and SJ Apartment without setting foot in Nebraska in relation to them or St. James Manor.

The director of operations for the office of general counsel at DLA Piper stated in his affidavit that DLA Piper was organized in Maryland and that its principal place of business is in Maryland. It does not have a Nebraska office, nor does it own or lease property in Nebraska, have a registered agent in Nebraska, have any employees or partners living in Nebraska, or have any attorneys with an active license to practice law in Nebraska. DLA Piper has a website that is generally accessible but that is not directed at Nebraska or Nebraska residents.

HUD is a federal agency, and HAP is a federal program. Friedgut communicated with Foley regarding HUD issues involving properties in Nebraska, Kansas, Iowa, and Colorado. She communicated with HUD on Foley's behalf in connection with St. James Manor and other properties outside of Nebraska. Her affidavit provides that she communicated with HUD exclusively through HUD's regional office in Kansas City, Kansas, and headquarters in Washington, D.C. Friedgut has no recollection of communicating with HUD's local office in Omaha on behalf of Central States or SJ Apartment.

The Kansas City office was her primary point of contact with HUD. Friedgut was not involved in Central States and SJ Apartment's acquisition of St. James Manor or the award of tax credits by the Nebraska Investment Finance Authority. She maintains that her involvement relating to each of Central States' properties was specific to issues with HUD. Foley did, at some point, have Nebraska counsel, and Friedgut's affidavit provides that Foley "increasingly relied on his Nebraska counsel" in 2019.

Friedgut and DLA Piper regularly billed Central States and SJ Apartment for Friedgut's services by mailing invoices to Foley in Omaha, and Foley made payments on those invoices. Foley's affidavit provides that Friedgut communicated with him orally and in writing, participating in "dozens" of phone calls with him while he was in Omaha. Friedgut also participated in phone calls with other Nebraska-based parties in her representation of Central States and SJ Apartment, including the property manager and employees of St. James Manor, the prior owner of St. James Manor, and other counsel. She did not interact with Nebraska state officials or tenants of St. James Manor. Friedgut and DLA Piper never sent Foley an engagement letter or written services agreement, suggested a need for independent counsel, or otherwise expressly disavowed personal jurisdiction in Nebraska.

Friedgut was representing Central States and SJ Apartment when HUD indicated that it would not approve the prior owner's assignment of its HAP contract. Central States and SJ Apartment allege that HUD's unwillingness to approve the HAP assignment was "arbitrary and capricious," "completely irrational," and "contrary to HUD policy goals." Despite that, Central States and SJ Apartment allege that Friedgut did not seek reconsideration of the decision, a further meeting, or any appeal; when Foley asked about appeal, Friedgut responded she was unaware of any such process even though an appeal process was available; and no timely appeal was brought. Central States and SJ Apartment further allege that because

the HAP assignment was not approved, SJ Apartment was unable to receive any meaningful rental income through HUD payments or otherwise and filed for bankruptcy protection; SJ Apartment sued HUD through Nebraska counsel and convinced HUD to retroactively approve the HAP assignment; and by that time, retroactive approval was futile because SJ Apartment had already lost St. James Manor to foreclosure in bankruptcy proceedings.

In December 2020, Central States and SJ Apartment filed a complaint in the district court for Douglas County, Nebraska, against Friedgut and DLA Piper alleging legal malpractice. Friedgut and DLA Piper subsequently moved to dismiss, arguing a lack of personal jurisdiction over themselves in the State of Nebraska.

The district court held a hearing to address the jurisdictional issue, and evidence was received. At the hearing, Friedgut and DLA Piper emphasized that Friedgut did not initiate or solicit contact with Foley to commence the parties' relationship. Friedgut and DLA Piper argued that Friedgut's representation of Central States and SJ Apartment exclusively concerned federal law and HUD. Friedgut and DLA Piper maintained that the location of St. James Manor was not determinative.

At the hearing, the district court compared the case to *Yeransian v. Willkie Farr*[1] in explaining its conclusion that Friedgut and DLA Piper "[had] not purposefully availed themselves to the jurisdiction of Nebraska and would not expect to be haled into court [in the state]." The district court found it important that Foley initially reached out to Friedgut in Chicago to solicit her services.

The district court dismissed Central States and SJ Apartment's complaint on September 13, 2021. This appeal followed. Before the Court of Appeals addressed the appeal, we moved it to our docket.[2]

---

[1] *Yeransian v. Willkie Farr*, 305 Neb. 693, 942 N.W.2d 226 (2020).

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

## ASSIGNMENT OF ERROR

Central States and SJ Apartment assign, restated, that the district court erred in finding that the court lacked personal jurisdiction over Friedgut and DLA Piper.

## STANDARD OF REVIEW

[1] When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion.[3] However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.[4]

[2,3] An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.[5] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[6]

## ANALYSIS

[4,5] Because the district court's hearing was on the issue of personal jurisdiction and the evidence received was limited to affidavits with accompanying exhibits, we review de novo the legal question of whether a prima facie case of personal jurisdiction has been established.[7] Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[8] The Due Process Clause of the 14th Amendment to the U.S. Constitution bars a court from exercising personal

---

[3] *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014).

[4] *Id.*

[5] *Yeransian, supra* note 1.

[6] *RFD-TV, supra* note 3.

[7] See *id.*

[8] See *Yeransian, supra* note 1.

jurisdiction over an out-of-state defendant, served with process outside the state, unless that defendant has sufficient ties to the forum state.[9] Thus, before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the state's long-arm statute is satisfied and, second, whether minimum contacts exist between the defendant and the forum state for the court to exercise personal jurisdiction over the defendant without offending due process.[10] When contested, the burden of proving a forum court has personal jurisdiction falls on the plaintiffs.[11]

[6,7] Nebraska's long-arm statute extends its courts' jurisdiction over a person who falls into one of the categories enumerated under the statute or who has "any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States."[12] It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.[13] When, like here, a state construes its long-arm statute to confer jurisdiction to the fullest extent constitutionally permitted, the inquiry collapses into the single question of whether jurisdiction comports with due process.[14] Therefore, the issue is whether Friedgut and DLA Piper had sufficient minimum contacts with Nebraska so that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.[15]

---

[9] *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018).

[10] *Yeransian, supra* note 1.

[11] See *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

[12] See Neb. Rev. Stat. § 25-536 (Reissue 2016).

[13] *Yeransian, supra* note 1.

[14] *Id.*

[15] See *id.*

## MINIMUM CONTACTS

[8-11] To constitute sufficient minimum contacts, a defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.[16] In other words, a Nebraska court's ability to impose liability should be predictable to the parties before the court based on their own actions.[17] A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.[18] General personal jurisdiction arises where a defendant's affiliations with a state are so continuous and systematic as to render the defendant essentially at home in the forum state.[19] Specific personal jurisdiction, by contrast, requires that a claim arise out of or relate to the defendant's contacts with the forum.[20] Friedgut and DLA Piper do not appear to have "continuous and systematic" connections with Nebraska; nor are they "essentially at home" in the state. Rather, Central States and SJ Apartment maintain that the district court had specific personal jurisdiction over Friedgut and DLA Piper.

## SPECIFIC PERSONAL JURISDICTION

[12,13] Where a defendant's contacts with the forum state are insufficient to exercise general personal jurisdiction, specific personal jurisdiction is available if the claim arises out of or sufficiently relates to the defendant's contacts with the forum in a way that creates a substantial connection between the defendant's connections to the forum state and the

---

[16] *Id*.

[17] See, e.g., *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ("[t]he Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit").

[18] *Yeransian, supra* note 1.

[19] *Id.*

[20] *Id.*

operative facts of the litigation.[21] Naturally, then, specific personal jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.[22] Purposeful availment is essential to any finding of personal jurisdiction.[23] Accordingly, here, we must consider the quality and type of Friedgut's and DLA Piper's activities and determine whether their actions create substantial connections with Nebraska, resulting in their purposeful availment of Nebraska's benefits, protections, and laws.

[14] Central States and SJ Apartment correctly argue that physical presence in the forum state is not always necessary to establish personal jurisdiction. In *Williams v. Gould, Inc.*,[24] we explained: "Despite lack of physical presence in the state where a contract is to be performed, a nonresident defendant, who purposefully directs activities toward a forum state's residents, through such contract, may be constitutionally subjected to suit in the state where the contract is to be performed." Pointing to *Williams*, Central States and SJ Apartment contend that Friedgut and DLA Piper purposefully availed themselves of the privileges of conducting activity in Nebraska by entering into an attorney-client relationship with "Nebraska entities" for which they billed their services.[25] However, the existence of a contract with a party in a forum state does not, in and of itself, provide the necessary contacts for personal jurisdiction.[26]

In *Williams*, an out-of-state physician contacted a lead refinery and proposed terms for a contract engaging his services as a long-term consultant regarding lead poisoning.[27] We

---

[21] See *id.*

[22] *Id.*

[23] *Id.*

[24] *Williams v. Gould, Inc.*, 232 Neb. 862, 879, 443 N.W.2d 577, 588 (1989).

[25] Brief for appellant at 11.

[26] *Yeransian, supra* note 1.

[27] See *Williams, supra* note 24.

concluded that under the facts and circumstances, a Nebraska court's exercise of specific personal jurisdiction over the physician was appropriate.[28] In examining similar cases from other jurisdictions, we found that it was the defendant's purposeful act of soliciting patients from the forum state which provided the necessary foreseeability of being haled into court in the forum state and allowed personal jurisdiction to attach.[29] We emphasized, however, that the residence and activities of a physician's patient cannot, unilaterally, supply the minimum contacts necessary for due process.[30]

Here, the parties agree that Foley reached out to Friedgut at her Chicago office after a third party recommended her. Friedgut represented Nebraska entities, but she did not solicit Nebraska residents or entities as clients. Neither, in this case, did DLA Piper. The district court noted this point when distinguishing the case from *Williams*.

[In] determining whether our courts have jurisdiction over a plaintiff's current or former out-of-state attorney, and insofar as it informs our "purposeful availment" analysis, we may consider which party's actions effectively initiated an attorney-client relationship.[31] Pointedly, a Nebraska-based client will not provide a sufficient basis for specific personal jurisdiction over a nonresident attorney absent the solicitation of Nebraska-based clients or something else linking the attorney to the state.[32]

Outside of Nebraska, "case law overflows on the point that providing out-of-state legal representation is not enough

---

[28] See *id.*

[29] See *id.*

[30] See *id.*

[31] Cf. *Williams, supra* note 24, 232 Neb. at 881, 443 N.W.2d at 589 ("when a health care provider, such as a physician or hospital, purposefully directs activities toward a resident of the forum state, the provider is subject to the personal jurisdiction of courts in the state where the health care recipient resides").

[32] See *Yeransian, supra* note 1.

to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides."[33] Other jurisdictions generally support the proposition that a non-resident attorney providing expertise specific to federal law or another state's law is not subject to a state's jurisdiction solely based on a client's or third party's residency and activities in the forum state.[34] As noted by Friedgut and DLA Piper, the plaintiff cannot be the only link between the defendant and the forum.[35] Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over the defendant.[36]

In a case factually similar to the matter before us, the Indiana Supreme Court rejected an argument that specific personal jurisdiction should attach.[37] In *Boyer v. Smith*, employers brought claims, including malicious prosecution and abuse of process, against a Kentucky-based attorney.[38] The employers'

[33] *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996) (citing *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986); and *Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982)).

[34] See, e.g., *Companion Property and Cas. Ins. Co. v. Palermo*, 723 F.3d 557 (5th Cir. 2013); *Boyer v. Smith*, 42 N.E.3d 505 (Ind. 2015); *Fulbright & Jaworski v. Eighth Jud. Dist.*, 131 Nev. 30, 342 P.3d 997 (2015); *Cerberus Partners v. Gadsby & Hannah, LLP*, 836 A.2d 1113 (R.I. 2003). See, also, *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995); *Porter v. Berall*, 142 F. Supp. 2d 1145 (W.D. Mo. 2001), *affirmed* 293 F.3d 1073 (8th Cir. 2002); *Ex parte Dill, Dill, Carr, Stonbraker*, 866 So. 2d 519 (Ala. 2003).

[35] See *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

[36] See *id.* See, also, *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (unilateral activity of another person not appropriate consideration in determining whether defendant has sufficient contacts with forum to justify assertion of jurisdiction).

[37] See *Boyer, supra* note 34.

[38] See *id.*

suit was filed in Indiana and related to the attorney's repre-sentation of a former employee in a federal employment dis-crimination lawsuit.[39] In the underlying matter, the attorney had requested and received a notice of right to sue from the Indianapolis, Indiana, office of the U.S. Equal Employment Opportunity Commission (EEOC), a federal agency, after her client's pro se claim was transferred from the Ohio EEOC office.[40] The attorney then filed the lawsuit in a Kentucky federal district court.[41] The employers argued that the attorney had subjected herself to Indiana jurisdiction by communicating with the Indiana EEOC, corresponding with and sending docu-ments to the employers' Indiana attorney, and representing her client at a deposition in Indiana.[42] But the Indiana Supreme Court disagreed, finding the attorney's contacts with Indiana far too minimal to warrant specific personal jurisdiction.[43] In so holding, the Indiana Supreme Court noted that the attor-ney had never practiced law in Indiana, had never sought or obtained a license to practice law in Indiana, and was not solic-iting business in Indiana.[44]

The Eighth Circuit Court of Appeals conducted a com-parable analysis in *Austad Co. v. Pennie & Edmonds*.[45] In *Austad Co.*, a South Dakota business sued a New York-based law firm, alleging legal malpractice and breach of fiduciary duty.[46] The claim was based on the firm's representation of

---

[39] See *id.*

[40] See *id.*

[41] See *id.* See, also, *Boyer v. Smith*, 24 N.E.3d 435 (Ind. App. 2014), *vacated* 37 N.E.3d 960 (Ind. 2015), and *affirmed in part and in part vacated* 42 N.E.3d 505 (Ind. 2015).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Austad Co., supra* note 33.

[46] *Id.*

the business in patent litigation in Maryland.[47] The firm's contacts with South Dakota included numerous phone calls into the state, monthly bills mailed into the state, checks paid by a South Dakota bank, and a 3-day visit to South Dakota by agents of the firm to inspect documents.[48] The Eighth Circuit found these contacts insufficient to establish that the firm purposefully availed itself of the benefits of South Dakota law.[49] In affirming the district court's dismissal of the claim, the Eighth Circuit noted, among other factors, that the firm did not maintain an office, advertise, or solicit business in South Dakota.[50]

Central States and SJ Apartment emphasize that St. James Manor is in Nebraska and that "the damage to the Nebraska clients occurred in Nebraska, when they lost their Nebraska development project to foreclosure in Nebraska."[51] This same "effects of misconduct" approach has been rejected by other courts.[52] Further, as the U.S. Supreme Court held in *Walden*[53]:

> [A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] Brief for appellant at 11.

[52] See, e.g., *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) (legal malpractice); *Federal Deposit Ins. Corp. v. Malmo*, 939 F.2d 535 (8th Cir. 1991) (legal malpractice); *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972) (medical malpractice); *Poole v. Sasson*, 122 F. Supp. 2d 556 (E.D. Pa. 2000) (accountant malpractice); *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377 (Mo. 1979) (medical malpractice).

[53] *Walden, supra* note 35, 571 U.S. at 290.

We are not persuaded that the location of St. James Manor provided Friedgut and DLA Piper with a meaningful connection to Nebraska when the legal benefit their clients sought was a contract with a federal agency and through a federal program, under which St. James Manor could just as well have been in another state. We are also not persuaded that the Nebraska-specific injuries alleged by Central States and SJ Apartment, including the loss of St. James Manor, provided Friedgut and DLA Piper a meaningful connection to Nebraska.

Central States and SJ Apartment have not met their burden of demonstrating that a Nebraska court can constitutionally exercise specific personal jurisdiction over Friedgut and DLA Piper. The facts show that Foley reached out to Friedgut at her Chicago office, hoping she could help Central States and SJ Apartment navigate a dispute with a federal agency and facilitate approval of a contract through a federal program. Further, Friedgut performed all of her work from Illinois, she was never licensed to practice law in Nebraska, she never traveled to Nebraska for the case, she never filed suit in Nebraska, and she never provided in-court representation in Nebraska. Additionally, neither Friedgut nor DLA Piper had offices in Nebraska or ever advertised in or solicited any business from Nebraska. This informs a finding that Friedgut and DLA Piper did not purposefully avail themselves of the privilege of transacting business in Nebraska. Further, it appears that Friedgut's representation was specific to HUD and federal law; as such, we are unconvinced that she and DLA Piper reasonably anticipated being haled into a Nebraska court in connection with this representation.

Central States and SJ Apartment further argue that Friedgut and DLA Piper should have anticipated being haled into a Nebraska court because, as a sophisticated attorney and an international law firm, they could easily have provided Central States and SJ Apartment with an engagement letter expressly disavowing Nebraska jurisdiction. We are not persuaded that the sophistication of legal professionals contorts the applicable

analysis in such a way, and we are unwilling to impose the high standard suggested.

Finally, Foley's affidavit maintains that Friedgut's representation of Central States and SJ Apartment "went beyond mere HUD matters." Without more, however, conclusory statements such as these provide an insufficient basis for an exercise of specific personal jurisdiction. Due process requires more than the attenuated contacts before us.[54]

## CONCLUSION

The district court did not err in dismissing Central States and SJ Apartment's complaint for lack of personal jurisdiction.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.

---

[54] See *Walden, supra* note 35.